We'll next move to the second case of the day where I believe both counsel are appearing remotely. That case is United States v. Perryman 20-1453. Do we have Ms. Lane and Mr. Wood? I'm here, Your Honor. Let's see, I think we're waiting for Ms. Lane to speak. Yes, Your Honor. I'm sorry. I heard everything. My computer was acting funny about coming off. Okay. All right. We're ready to go forward then with arguments in United States v. Michael Perryman 20-1453 and we'll hear first from Ms. Lane on behalf of Mr. Perryman. Go ahead. Yes, Your Honor. May it please the court, I am in Mr. Perryman who is the defendant and the appellant in this case. I have four issues to argue. If it please the court, I will combine the sufficiency argument and the Rule 29c argument together since they both apply to sufficiency of the conviction, Your Honor. In Rule 29c, a judgment of acquittal only where there is sufficient evidence to sustain a conviction and it calls for the court to distinguish between a reasonable inference and speculation. Under the possession, the conviction for possession with the intent to distribute as well as possession of a firearm by a felon. Both of these were under the premise of constructive possession and joint possession. Ms. Lane, on the issue of the intent to distribute the narcotics, how do you get around your client's confession? Whether it's constructive possession or actual possession, how do you get around at the stage that we're in post-trial conviction his confession? Your Honor, my client maintained that he did not make that confession. The only reason why I have to take the facts in in line with the conviction. So in that case, in that case, the confession we believe was a false confession and without more, they couldn't survive. Was that argued before the jury? The confession was put into evidence? Yes, it was argued before the jury that he did not make that confession. So we have to take everything in the light most favorable to the government and look at the evidence that was admitted. And the jury was free to believe or not believe your client, but there was evidence that he confessed that the drugs were his. I'm not sure how you get around that. Yes, ma'am. What I wanted to read, I get around that by showing the evidence that was also, the lack of evidence that was also placed in order to show a connection to him physically. The lack of evidence that was presented in the court that showed that he, there was no evidence to show that he ever was in possession of those drugs, that he ever, there was no fingerprints or anything of his on the drugs or the contraband. There was no possession when they arrested him with drugs or a firearm. So at this, at that point, Your Honor, I'm also arguing the facts that, the other facts that does not connect him, connect him to the drugs but for the confession. The alleged, well, I possession, the government must show that the defendant knowingly had both the power and attention to exercise the dominion and control over the object, either directly or indirectly through others. The government must also show that there's a nexus between the defendant and the contraband by showing either exclusive control or substantial connection to the contraband. When sharing a living space with others, more evidence is necessary to show true possessors from mere bystanders. And in this situation, Your Honor, that they never showed that there was connection to, from, between Mr., but other than the confession, no other evidence to show that Mr. Perryman was in control or the drugs in the home, nor did they show that he intended to, intended to exercise dominion and control over the weapon in the home. Can I ask you a question on the point you just made? Yes. Okay. Suppose hypothetically, I know this didn't happen, but suppose hypothetically that somebody broke into Mr. Perryman's home during the middle of the night to steal the drugs that were in the home from him. Do you agree that he could have used the rifle to protect himself and to prevent the theft of the drugs? Yes, I agree that he, I guess he could have, he could have, that in, under that scenario, yes, he could have. Okay. And so isn't, isn't that given that proof of criminal elements can be circumstantial, doesn't have to be direct. Doesn't that hypothetical, simple though it may be, show that a reasonable jury could have viewed the evidence as sufficient to support a conviction under 924 C? No, I don't think that's so, Your Honor, because there, there was no proof that Mr. Perryman ever intended to use that weapon, ever brandished that weapon, ever had any contact with that weapon. It's part of the testimony. There was nothing to show that this man had ever intended to use that weapon, had a reputation for using weapons or anything, Your Honor. There was no, even there's not even any evidence to show that there was any drugs transactions or anything linked to the home was, there was a valid search warrant, but there was nothing in the surveillance or anything of that to state that Mr. Perryman dealt drugs from his home or had, had possessed a weapon during any transactions or anything. What under the law would require that a transaction take place out of the home? If the drugs were there, the officers, when they executed the search, recovered the drugs and they recovered the gun, what in the law would require a transaction? Well, the in furtherance of definition requires that they show a nexus between the gun and the drugs. And in this situation, there is none. Only, only the only, the only thing that connects the drugs and the gun is a speculative testimony from the officer who state that drugs and, and, and guns go hand in hand. There was nothing, it's, it's appropriate to make the nexus. It's in the case law that requires a nexus be made between the two and not just mere possession. Otherwise under that premise, that anytime a gun is found in the, the gun is found in a home, then then that's automatic in furtherance of, but that's not what Congress intended when they changed the law after Bailey. They intended that there be an additional, additional elements proven by the government to show that there is a connection between that gun and, and, and the drugs. And there was nothing presented in this case to, to do that other than that speculative testimony that drug dealers often have weapons to protect themselves. And, and, and furthermore, if we talk about the confession, he also stated in what the officer claimed he said was that he possessed everything but the gun. So in that situation, there's nothing, there's nothing, no facts and evidence in this case that, that connects the gun, the drugs, and Mr. Pyramid other than they all live in the same house. And, and according to case law, that is not enough. That is not enough. The mere presence with the gun to criminal activity is not enough to prove the in furtherance of crime. So in that situation, your honor, the proximity of the proximity to the, the drugs was not enough. And because the government failed to make that link other than through speculation and having the jury unreasonably fill in the gaps that based on that speculatory testimony, which was not directly to Mr. Pyramid, it did not, he did not, he testified that he had no personal knowledge of Mr. Pyramid on whether or not his, and whether or not he carried a firearm in, in dealing drugs or that he had brandished or showed a weapon in, in that, in that during that time or that he had ever possessed one in during a meeting or during surveillance, nothing was ever shown it. And in fact, the normally in those cases where that was, the person either had it on them or right there where the drugs were. And in this situation, there was no proof of that. There was no proof other than that the, the gun was in the same house as the And so in that situation, Your Honor, we're saying that that's a, that's issuing strong suspicion, which is not a substitution for guilt. And that the mere presence of the gun where there are drugs is not enough either. And that's been established as precedent, Your Honor. So we're asking the court to continue with that and find that, that, that the government did not meet the, the definition of in furtherance of, through the facts of the case. And that the officer's testimony was not enough to establish that nexus between the gun and the drugs. And and doing so was simply criminalized, criminalized mere possession, which was not the intent of, not the intent of Congress. They already established laws to, to criminalize mere possession. And in this situation, he was convicted of mere possession because it was in the home where he was. But at this point, Your Honor, I'm also saying that the government lacked the, lacked the evidence to show that he possessed, he possessed the weapon as well. Yes, it was in the home where he was, but there are also other, other people who occupied the home. And one of them was the owner of the gun who testified on her gun. She was not relinquishing her gun to him that she would have planned on coming to removing the gun and taking it to her new home. And it is pretty clear though that Mr. Perryman was the person who had moved the gun from the prior residence to this one. Yes, Your Honor, but only one occasion. And why isn't that enough for the 922 G one charge? I'm saying that because under the, under, I'm sorry, under one case, there was a joint possession of a, of a, of a firearm where there were two occupants of the home and they had to show more that, uh, more than a vague date of when that person last touched the gun. I understand that. But, but if, if you've got joint possession, but, um, I thought we had pretty clear evidence that a jury could believe that it wasn't Ms. Thomas who moved the gun from the prior residence, but it was Mr. Perryman who did so. That's possession by him, right? Yes, Your Honor. May I reserve the last two minutes for my rebuttal? You may. Do you want to answer that question or are you done? Oh, I'm sorry. I, in with the, um, there is evidence that it put in place evidence that he moved the gun to the new residence, Your Honor. But I believe that that was a necessity, a necessity and not leaving a loaded weapon in an empty for another person to come in contact with and possibly a child. You can't leave a weapon. Was that argued to the jury? I'm sorry. Was the necessity defense argued to the jury? No. Okay. Thank you. You can reserve the rest of your time for rebuttal. Um, and, uh, we'll hear from Mr. Wood for the government. Your Honor, may it please the court. Bob Wood on behalf of the United States. Um, this court should affirm, uh, for many of the reasons that were part of the court's discussion already, the evidence was strong on all the counts and the exclusion of evidence that, uh, the judge undertook relating to the officer's prior discipline was appropriate, um, regardless of whether the court analyzes it under the constitution or the evidentiary rules. And unless there are specific questions about the finer points of our briefing, uh, the government is happy to rest on its brief. Uh, I have one, Mr. Wood. I couldn't tell from the photographs. The drugs were found in the master bathroom. Is that correct? Yes. On a shelf. On a shelf. Do we know how high the shelf was? Pretty high. It was, uh, you know, as one of the officers called it like a bulkhead shelf, it was higher than normal access. Above eye level. Yeah, is definitely above eye level. And, um, you know, I try to treat every case is a, as a, uh, opportunity to learn lessons. This is sort of a photography class one. Maybe there could have been some clearer photographs of where things were in the bathroom, but this shelf was, was really rather high. If you took a picture of yourself in the mirror for some purpose, you would not capture the drugs because they were nine feet, eight, eight and a half, nine feet up. Okay. And unless there's anything else, we'll rest on our brief. All right. Mr. Wood, just one more question. Was it uncontested that the closet where the firearm was found was only accessible through the bathroom? That was, as I understand it, if there was ever a glancing reference to that, I don't recall it. I don't think they contested that. And that's pretty clear, even if not from just the photographs from piecing the photographs and the evidence together. One officer testified very specifically. You cannot get to the bathroom to the closet other than through the bathroom. So thank you. Okay. Thank you, Mr Wood. Um, Miss Lane, anything further? Yes, your honor. Um, the accessibility in, in regards to what the, um, your honors were asking about, yes, the, the drugs and the gun was, uh, far apart from each other. The drugs were in the bathroom. The gun was in the closet. The closet is eight to 10 feet deep. It's right at the entry point of the bathroom to the left. The closet goes in and deep. And then the, um, and the drugs were found above the mirror above the sink, which the sink is across. If you look in the pictures, the sink is across from the, the actual, uh, the actual closet and the drugs were found in a shelf on top where people, I guess, put plants as a decorative little opening space where people put things up there for decoration. Um, and based on that, that the proximity, um, the proximity is, is insufficient to, to, and mere proximity is insufficient to warrant a conviction under the, in furtherance of as well, uh, based on, uh, the, where the drugs were found and where the, um, rifle was found. All right. Our thanks to both counsel. Uh, the case is taken under advisement.